May it please the Court, my name is Patrick Burns, and I, along with Jamie Cheng, are student advocates for the petitioner, Mr. Shirong Chen. Now, are you going to be using all of the time, or? I plan on reserving two minutes for rebuttal. But you're doing all the argument? Yes, Your Honor. All right, and you're a student at Hastings? Yes, Your Honor. All right, and just, I recognize that you filed all the appropriate papers, but we have a change of name. And is your professor, supervisor here? Yes. All right, thank you. All right, and you said you want to reserve two minutes? Two minutes for rebuttal, please. All right. Well, that's aspirational, but we'll try to save that for later. Okay, you may proceed. Thank you, Your Honor. Your Honors, here the BIA abused its discretion in two ways. First, it failed to consider our client's claim for a well-founded fear of persecution. And second, it failed to provide a reasoned explanation as the imputation of political bias. Now, with regards to the first error, nowhere in the BIA's opinion do the words well-founded fear appear. The BIA did not address this claim and assumed that Mr. Cheng could only prove that claim through a showing of past persecution. Well, let me just ask you this in terms of your proceeding to the merits. But didn't you have an adverse ruling on whether you were time-barred? No, Your Honor, there were no adverse credibility rulings. Well, there are no adverse credibility, but didn't the court say that the asylum was not timely filed, but then said, okay, even if it was, then got to the merits? Yes, Your Honor. So you have to get past that, too. Yes, Your Honor. For the asylum claims, timeliness does defeat them. However, substantial evidence in the record does not support the agency's determination on this issue. Well, except for it's a little tricky from the standpoint certain type of decisions aren't reviewable by the court. And so are you asking us that we can't put our nose in every tent, and they're arguing that this isn't reviewable because there were disputed facts. So tell me how we can get to that, because we have to do that to get to the merits. Your Honor, this court in Kounoverdians v. Mukasey and Lynn v. Holder held that when the applicant has credibly testified as to activity in the country of origin, as well as their arrival in the United States, and no adverse credibility rulings were made on that testimony, that it is an undisputed fact, and that this court has jurisdiction to apply that undisputed fact to the law. Okay. I'll question them further. So go ahead and proceed with what you outlined you wanted to talk about. Okay. With respect to the abuse of discretion here, first, the IJ and the BIA failed to address the well-founded fear of persecution. Mr. Chen has submitted evidence that can establish this, even if he fails on a showing of past persecution. Most notably, he has testified that he fears returning to China, that the police continue to look for him at his home, and have told his family that they will be involved if he does not give himself in immediately. That goes to his subjective fear. To show that this fear is objectively reasonable, Mr. Chen has submitted country reports that show that activists who reside abroad and return to China do face increased punishment for their past transgressions. Okay. So your position is there was no adverse credibility finding? Yes. There were no adverse credibility findings as to any of Mr. Chen's testimony. So what does that mean in terms of what does he have, what is his case that is considered to be true then? What are his facts that he was persecuted? With respect to his fear of future persecution, the facts are that he's got to have the past. What are the past persecutions? He does not need to establish past persecution in order to show well-founded fear. This Court held that in Zhao v. McCasey. Counsel, why are you so reluctant to address directly the past persecution claim? You're at least suggesting to us that you don't think you can take that issue on. Why are you so reluctant to directly address that issue? No, Your Honor, we are not reluctant. In fact, on past persecution, there were also failures by the IJ. It's just that the agency didn't even address a certain claim here, and that's why I began with it. However, with regards to past persecution, the IJ did not consider highly dispositive testimony as to the imputation of a political opinion onto Mr. Chen. This Court has held with imputation claims that both direct statements from the persecutors as well as circumstantial evidence can establish such a claim. But what was his past persecution? What are the facts in the record? The facts in the record were that Mr. Chen was protesting outside of City Hall, trying to protest the deteriorating working conditions at his factory. At that point, after handing complaint letters to City Hall, police arrived, started dispersing the crowd and beating them, at which point they identified Mr. Chen as a leader, detained him, and physically abused him, punched him in the chest so hard he had to double over and began urinating on himself, at which point they electrocuted him twice and then detained him. You don't mean that. You don't mean they actually electrocuted him. Mr. Chen has testified in the record. They think you have to die when you get electrocuted. He was What did they do? They used some kind of what? Mr. Chen testified that he was electrocuted with a prod. Now, he also was detained for 10 days without adequate protection. He was given shocks, I take it, with a prod. Electric shocks? Perhaps, Your Honor, but this court, in other cases, such as Cal versus Mukasey, involved electrocution through such shocks where the court found that there was a sufficient level of abuse that rose to persecution. Now, after his physical abuse, he was also detained for 10 days without adequate food or water. Even another problem with the level of abuse argument that the government makes is that the BIA never rendered a decision on this either. It simply held that there was no nexus between the abuse that he endured and his political opinion. Therefore, as long as this court accepts his arguments regarding nexus in light of Hu versus Holder, it should remand the case so that the BIA can consider the level of persecution claim. So what do you have to say about the cat? It doesn't seem to me that you're the record sufficient on cat. The cat claim was presumptively denied by the agency properly because it is a higher standard than asylum. However, if this Court agrees with Mr. Chen's arguments as to asylum and nexus in light of Hu versus Holder, then it should remand the cat claim so that the agency can consider the level of persecution claim. Oh, no. That doesn't necessarily follow because cat is higher. So you could prevail on asylum and withholding but not cat. Of course, Your Honor. What I'm saying is the cat claim wasn't addressed by the agency because they presumptively denied it, so they haven't rendered a decision as to whether he was tortured or not. If this Court does reverse on asylum, then the cat claim needs to go back so such a decision could be made. And in light of Hu versus Holder, a case that is factually indistinguishable from this one, this Court should remand the case. To credit the agency on this, Hu versus Holder came out a week after the BIA opinion and three years after the IJ's decision. Now, four times in the past year and a half, this Court has remanded a case of a political protester in China in light of Hu versus Holder, most recently in Miao Yun-sha versus Holder. See, I don't think you get to the – I think if – just say if we were to agree with you that he had the single arrest and beating and incarceration, that doesn't amount to torture. So – and they denied the cat claim. So I think you could presume – you know, I think – you know, tell me what else there is in the record about torture. I don't think you have enough for torture. And you don't get to then just reopen that back down on remand. The agency never made a determination about torture. The IJ did. The IJ did say that he was not tortured. But even if he doesn't prevail on that claim, this Court should consider his persecution claims under asylum. He was physically abused, detained for 10 days without adequate food or water, and put under a reporting requirement. Do you want to reserve – do you want to reserve two minutes? Yes, thank you. All right. Thank you. Thank you, Your Honors. Good morning again. My name is Jeffrey Bernstein, again. And I still represent the Attorney General of the United States. Still. Welcome back. Thank you very much. I feel very old today. I'd first like to identify for the Court what the government believes is not before them. Persecution is not before you, because although the petitioner did appeal to the BIA, alleging that the immigration judge erred in concluding that he did not experience past persecution, the Board of Immigration Appeals did not address that issue, simply because it concluded that the case could be resolved on another matter. That is, Mr. Chen's failure to prove that anything that happened to him or would happen to him in the future was on account of a protected factor. You know, I don't understand this. He testified that he was protesting conditions at a State-owned factory. Is that correct? Well, he did not. He said it was State-owned. You're reaching – your question presumes a fact which I don't believe has been established. I think he did testify that he was protesting working conditions. Yeah. And he may well have indicated that the plant was State-owned. Yes. He asserted that the plant was State-owned. However, the immigration judge, in a hearing which was held approximately a year and a half, I believe, before the merits hearing, asked Mr. Chen if the – if the government – who owned the factory? Did the government own the factory? He said he did not know. The – oh, he said – I believe he said the government did own the factory. Yeah. And the immigration judge then asked him to corroborate that assertion with evidence regarding who owned the factory. That corroborative – Who else would? This is China. In China – Who else? Who would have owned? Is there any suggestion that someone else owned the factory? I'm not an expert on China, Your Honor. Neither am I. But either was the I.J., I assume. But I do know, and I think the I.J. probably does because the I.J.s hear a lot of China claims, a lot. But it's – it appears – it seems to me from reading – I'm not so sure it's in the record, but certainly from my experience with China, and I know it's not in the record, but the government in recent years has relaxed the economy in China and – Well, clearly that's true. But who else – what suggestion is there in this record that anybody else owned this factory? China still owns a lot of stuff. Well, they do, but they also don't own a lot of stuff. And that's why the immigration judge required corroboration. Well, here's my – here's my problem is that the immigration judge does not appear to have made an adverse credibility finding. If that is the case, then you have to credit as true certain things. And that's where I'm getting into a problem here. And then with – I think it's the Hu case, Hu or Hin. Yes, Hu. It's – that seems to be a problem for you. Well, if I may, Your Honor, and I don't mean to interrupt, and I apologize for doing so. No, no. I mean, but I – that's where – the thing – that's where I'm – it seems that the immigration judge just wasn't believing this guy. But the problem was there's no adverse credibility finding, and that makes this a very difficult record to review. That's not – that's not really a problem with respect to the issue that Judge Schroeder and I were discussing, because the Real ID Act, which does apply to his claim because he filed his asylum application after the date, effective date of the Real ID Act. The Real ID Act states, provides, as the Court has held many times, that even if no adverse credibility determination is made, even if the judge determines that the alien is credible, the judge still can require the provision of reasonably available corroborative evidence. Well, on the time of this, you're hanging your hat on that, too, right? You're saying we can't – but there's no adverse credibility, and all the evidence there just seems to say it was timely. Well, no. We recognize the Court's decision, recent decision in, I believe, Nirmal Singh, which held that corroboration wasn't necessarily, whether we agree with that or not, is of no consequence. So we don't need to spend time on the timeliness, just get to the merits? I would like to start with the merits, because I think the – you don't need to reach  I'm certainly prepared to discuss the timeliness issue, but I – in discussing the merits issue, the most important elements that the Court must consider in its deliberations is, one, that the Petitioner bears the burden of proving every element of entitlement to relief and protection, and, two, even more important, the Petitioner bears the burden on appeal of identifying evidence that compels factual conclusions or inferences opposite to those reached by the administrative adjudicators. In this case, they must identify evidence that compels the factual conclusion that the police who arrested Mr. Chen while he was carrying a sign whose content is yet to be identified during a non-permitted gathering, which was – Counsel, isn't it just an inescapable conclusion from this record that even apart from the government-owned factory, this was a classic political protest? I mean, they were very upset about working conditions, about the lack of any attempt to deal with the terrible environmental abuses, the inattention to everybody getting sick. I mean, this was – this was an expression of a political opinion. How can you not – how could anyone not conclude that from reading this record? I don't – the government doesn't think that it was absolutely a political rally. What would support the view that this was – that the police were fussed about the fact that they didn't get a permit for some kind of demonstration? The police were fussed about the fact, initially, that the people who were occupying, I guess, the city hall or whatever it was, called them complaining about a disturbance outside the – outside the city hall. They called the police. The police came in, apparently, according to Mr. Chen, with guns blazing, and carted three people away and abused them, which, according to the State Department, is not unusual when the police take an individual into custody. However, there is no evidence that the police imputed any political opinion to him based upon his testimony. I understand that there is a statement appended to his asylum application which talks about the police suggesting – or telling him that confessing with us, confession is the best way to go, and would you confess to opposing the State government by making trouble. However, Mr. Chen did not exhaust any issue related to the statement appended attached to his asylum application, even if – and I don't think the Court's case law goes that far – even if the Court would conclude that contents of a statement which did not appear to be sworn, but even if it was an affidavit, the contents of an affidavit have to be deemed true if no adverse credibility determination is. But in any event, the Petitioner did not exhaust contentions based upon the matters contained in his statement. He concentrated in his brief before the Board only upon his testimony, and there is really not a shred of evidence in his testimony that the police attribute – imputed a political opinion to him. But he did – he introduced two affidavits from coworkers, right? Was that? That's with respect to the timeliness? With respect to the timeliness. That is correct. But they say when he was arrested. They say when he was arrested, and the immigration judge didn't make an adverse credibility determination on that, so. Well, I'm not understanding your position. He – there is evidence that he was protesting working conditions. There's no question about that. Or is there? I do not believe that the BIA or the immigration judge characterized it as such. I recognize. Well, the facts are there. Well, I recognize that a reasonable factfinder could draw that inference, but the BIA and the immigration judge did not. In this Court, based upon many – Well, what were they doing then? What they were doing was, I think – Praying for rain or what? Well, I don't think so, Your Honor, but I think according to his testimony what they were doing – and there were no speeches given during this protest, by the way. There was a sign, and the content of the sign is unknown, but what they were doing was trying to seek government redress for their grievance against a private factory. Private? It's private, yes. That's what the immigration judge and the board found. There is no evidence compelling a contrary conclusion in our view. There is. We just went through his testimony that it was a government-owned factory. Again, Your Honor, the Real ID Act provides the adjudicative factfinder with the opportunity to request corroborating evidence, even if the testimony is deemed credible, and the IJ did so. The petitioner did not provide evidence, did not indicate that the evidence was unavailable, and the immigration adjudicators reasonably drew an inference that the factory was not owned by the State, and there's no evidence compelling a contrary inference. Counsel, aren't there certain procedures that apply if the IJ is going to rely on the absence of corroboration, giving the petitioner some form of notice, and or if the corroboration is not to be presented, explain why it's not available. I mean, I don't get the sense that any of that was done here in a way that would allow you to rely on the absence of corroboration. This Court's case law does provide a quote-unquote procedure, Your Honor. But the main focus is one of notice, and the immigration judge must provide the alien with information that he requires corroboration and a reasonable time to provide it. In a very early hearing, approximately a year and a half, as I recall, before the final hearing, the immigration judge told the petitioner and his counsel that he wanted a number of corroborative, pieces of corroborative evidence, and one of which was evidence of who owned that factory. No evidence came forward. I see my time has well expired. If you'd like me to address the jurisdictional argument, I'm happy to do so. I think our questions are answered. Thank you. Thank you, Your Honor. Your Honors, with regards to timeliness, this Court does have jurisdiction because Mr. Chen credibly testified to leaving China on July 26, 2005, and arriving in the United States on August 9, 2005. Now, because there were no adverse credibility rulings made, according to this Court's holdings in Cunaverdiens and Lin, this Court both has jurisdiction and should find that the substantial evidence does not support the I.J.'s determination. With regards to the issue of state ownership, nowhere in the record did the I.J. require Mr. Chen to corroborate his claim. He credibly testified that the government owned the factory on page 94 of the record. Now, in that exchange, the I.J. does say, I want you to bring evidence of who runs the factory, but this came after questions about the salaries of the directors at his factory. That was not clear enough to put the applicant on notice that he was required to go get evidence of state ownership of the factory. The opposing counsel suggested that a year and a half ahead of the climactic hearing, that your client was put on notice that a certain kind of corroboration would be expected. Is that not a fair assessment of the record? No, Your Honor. The amount of time is not the key point. The key point is he was never ---- Well, I think answering the question is did that, what your ---- what counsel for the government said was a year and a half earlier your counsel was ---- your client was told that. Is that true or false? The dates between when he was told about evidence of who runs the factory and his final hearing was over a year. However, it was not clear that he needed to go get evidence of state ownership. The I.J., after their exchange, said that she wanted him to bring back evidence that the company exists and that he worked there. That was the final, on page 94 of the record, that was her final request. Now, he did bring back evidence that the company exists and that he did work there. Under Wren v. Holder, this court specifically refers to a two-step sequential analysis where first the I.J. must determine whether the applicant's credible testimony meets the legal sufficiency of what they're trying to prove. Only then must the applicant be put on notice. Nowhere in the record was there determination by the I.J. of whether state ownership, as he credibly testified to, was proven here. Not even in the I.J.'s oral decision, there wasn't even a line such as, although the applicant credibly testified, he was unable to get certain documents. Therefore, under Wren v. Holder, there was no corroboration required for state ownership. I'm sorry. What was the evidence he brought in that it exists? He brought a picture of the factory and also a certificate that showed, a certificate of outstanding work that showed that he had worked there. And so when the I.J. asked, I want you to bring back evidence. So, okay. That's, but what was the evidence in the record that it was state-owned? His credible testimony. The I.J. asked him, who owned the factory? Mr. Chen responded, the government. Now, absent a clear corroboration requirement. All right. We understand your argument, then. You're over time. Unless any of the panel members have additional questions, that will conclude oral argument. This matter stands submitted.
judges: Schroeder, Lipez, Callahan